UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 06-cv-02478-REB

ARTHUR J. NIEVES,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER REVERSING DISABILITY DECISION
## AND REMANDING TO COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#3], filed December 11, 2006, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that he is disabled as a result of bipolar disorder, depression, post-traumatic stress disorder, impaired intellectual functioning, and drug and alcohol addiction. After his applications for disability insurance benefits and supplemental security income benefits were denied initially, plaintiff requested a hearing before an administrative law judge. A hearing was held on June 14, 2005. At the time of this

hearing, plaintiff was 27 years old.  He has a ninth-grade education and past work experience as a fast food worker, telesolicitor, and box crusher, although the ALJ apparently concluded that none of this work constituted substantial gainful activity.  (**See** Tr. 22, 29 (noting alleged date of onset as June 1, 1988, and subsequently finding that plaintiff has not engaged in substantial gainful activity since his alleged date of onset).)

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe depression, the judge concluded that plaintiff's drug and alcohol abuse were contributing factors material to disability and that, in the absence of drug and alcohol abuse, the severity of plaintiff's mental impairment did not meet or equal any impairment listed in the social security regulations.  Although finding that plaintiff could not return to his past relevant work, the ALJ determined that he had the residual functional capacity to perform a range of medium work and that there were jobs existing in significant numbers in the national economy that he could perform.  The ALJ therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See* **Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  **Id.**  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  **Brown**, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh

the evidence or substitute its discretion for that of the Commissioner.  *Id.*

### III.  LEGAL ANALYSIS

In seven separate grounds of error, plaintiff challenges the ALJ's determination at every step of the sequential evaluation process.  Typically, such prodigious briefing bespeaks a party's failure to focus his arguments appropriately.  Not so here.  Rarely has this court seen an administrative decision so thoroughly permeated with error.  Multiple potentially severe impairments clearly suggested by the evidence are completely ignored.  Many of the purported findings are little more than conclusions and boilerplate.  Others appear to have been fashioned out of whole cloth.  The reasons given for rejecting various medical opinions and failing to credit plaintiff's testimony range from inexplicit to inapposite to improper.  Remand, with a strong suggestion to reassign this case to another ALJ, is clearly warranted on this record.

At step two of the sequential evaluation process, the ALJ analyzed the impairments of drug and alcohol addiction and depression under listing 12.09, which addresses substance addiction disorders.  The ALJ concluded that plaintiff met the requirements of the listing based on his determination that plaintiff had "marked" difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace.[1]  (Tr. 23.)  Nevertheless, he found that drug and alcohol

---

[1]  The level of severity for section 12.09 is satisfied if the requirements of at least one of nine other listed mental impairments are met.  Depressive syndrome is one of those disorders.  *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.09(B) (citing section 12.04).  In order to be considered presumptively disabling, a claimant's depression must satisfy the capsule definition, a set of medical findings (the paragraph A criteria), and a set of impairment-related functional limitations (the paragraph B criteria).  *See id.*, §§ 12.00A & 12.04.  The ALJ's opinion addresses only the paragraph B criteria, and his findings are not tied to any specific evidence in any event.  Nor does it appear they could be, since no medical source has ever opined that any of plaintiff's mental impairments impose functional limitations at the level of severity found

5

addiction was a contributing factor material to the disability finding and that plaintiff's depression therefore was not presumptively disabling.[2] However, the whole of the ALJ's analysis of this vitally important issue was as follows:

> The undersigned believes that the claimant's incapacitation is the result of substance abuse. It is reasonable to assume that most of the associated symptoms and loss of functional capacity would be significantly alleviated were the claimant to abstain from substance abuse.

(Tr. 24.) The ALJ's beliefs and assumptions about plaintiff's drug and alcohol addiction do not constitute substantial evidence to support his conclusion in this regard. Although the ALJ noted elsewhere in the decision that plaintiff was assessed a GAF[3] of 80 on discharge from the hospital following a one of his multiple suicide attempts (Tr. 26), the evidence on which it is based says nothing at all about the effect of plaintiff's drug and alcohol use *vel non* on his mental condition.[4] More importantly, this single instance of a relatively high GAF followed an in-patient hospitalization and the administration of

---

by the ALJ.

[2] Pursuant to the Contract With America Advancement Act of 1996, Pub. L. 104-121, 110 Stat. 847, §§ 105(a)(1)(C) & 105(b)(1)(I) (codified at 42 U.S.C. §§ 423(d)(2)(C) & 1382c(a)(3)(I)), a claimant is not disabled if alcohol or substance addiction is a contributing factor material to the finding of disability. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). Proper analysis of this issue requires the ALJ first to determine whether plaintiff is disabled. *Id.* (citing 20 C.F.R. § 416.935(a)). If he so finds, the ALJ must then determine whether plaintiff would still be disabled in the absence of substance abuse. *Id.* (citing 20 C.F.R. § 416.935(b)(1)). If plaintiff's remaining impairments are found not disabling in the absence of substance abuse, then substance abuse is a contributing factor material to the finding of disability, and plaintiff is not disabled. *Id.* at 1215 (citing 20 C.F.R. § 416.935(b)(2)(i) & (ii)).

[3] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" **Langley v. Barnhart**, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, **Diagnostic and Statistical Manual of Mental Disorders** at 32 (Text Revision 4th ed. 2000) ("DSM-IV")).

[4] Rather, the record notes that plaintiff's mental condition improved significantly following the administration of Depakote. (Tr. 595.)

6

appropriate medication.  *See Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006) (quoting Commissioner's teletype outlining how to apply the Contract With America Advancement Act to the effect that "when evaluating this type of evidence [of the effect of periods of abstinence on mental impairments] consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence").  As such, it is insufficient, without a more thorough discussion of the longitudinal evidence of plaintiff's mental impairments, to bear the entire weight of the ALJ's analysis.  Indeed, the consultative psychiatrist who examined plaintiff, Dr. Richard Madsen, assessed a GAF of 50 (Tr. 431),[5] even though plaintiff reported not having used alcohol for the past six months or drugs in the past year prior to his examination (Tr. 429).  Although a low GAF score itself is not necessarily indicative of disability, *see Cox v. Apfel*, 2000 WL 1472729 at *8 (D. Kan. Feb. 24, 2000), the ALJ may not "cherry pick" the evidence, relying only on those portions of the record that support his decision and ignoring contrary evidence, *see Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

The ALJ's attempt to discredit Dr. Madsen's opinion, *inter alia*, on the ground that it did not address plaintiff's drug and alcohol use does not withstand scrutiny, either. (*See* Tr. 27.)  Dr. Madsen clearly was aware of plaintiff's history of drug and alcohol use

---

[5]  A GAF of 41-50 "indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Eden v. Barnhart*, 2004 WL 2051382 at *2 (10th Cir. Sept. 15, 2004) (quoting **DSM-IV** at 34).

and abuse. (Tr. 429.) He apparently did not discredit plaintiff's report of not having used alcohol or drugs for a significant period of time prior to the date of the examination, and his assessment appears to be based on an assumption of its truthfulness. *See Nieto v. Heckler*, 750 F.2d 59, 60-61 (10th Cir. 1984) (fact that doctor's report is based on plaintiff's subjective reports is not sufficient to undermine medical opinion because, unless otherwise stated, opinion is presumed to include an assessment of plaintiff's credibility). Yet in any event, the fact that Dr. Madsen did not specifically discuss whether or how plaintiff's mental condition would be effected in the absence of drug and alcohol use is not proper grounds for discrediting his findings.[6] Indeed, under the Commissioner's regulations, "where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if she stopped using drugs or alcohol, an ALJ should 'find that [drug and alcohol addiction] is not a contributing factor material to the determination of disability.'" *Salazar*, 468 F.3d at 624 (citation omitted). Thus, the ALJ clearly erred in finding that drug and alcohol addiction was a contributing factor material to the disability determination.[7]

The ALJ also utterly failed at step two of the sequential evaluation process to

---

[6] To say nothing of the fact that the medical opinion on which the ALJ purportedly relied suffers from the same alleged infirmity.

[7] Although the ALJ's findings were that plaintiff otherwise met the requirements for presumptive disability under listing 12.09 (Tr. 23), I find it would be inappropriate to direct an award of benefits on that basis because the ALJ's conclusion is not otherwise supported by the record. (*See supra* n.1.) Neither Dr. Madsen nor Dr. Donald Glasco. the non-examining psychiatrist who also offered an opinion regarding plaintiff's functional limitations, found that plaintiff had more than "moderate" limitations in any relevant area. (See Tr. 430, 432-433.) Because plaintiff filed an appeal in the federal district court within the time allowed by law, this erroneous finding is not binding on the Commissioner. *See* 20 C.F.R. §§ 404.981 & 416.1446(b)(1); *cf.* .20 C.F.R. §§ 404.957(c)(1) & 416.1457(c)(1) (allowing Commissioner to apply principles of *res judicata* to prior administrative decision that "has become final by either administrative or judicial action").

address mental impairments that were clearly supported by the evidence, specifically bipolar disorder, post-traumatic stress disorder, a personality disorder, and impaired intellectual functioning. (*See* Tr. 120, 409, 413, 425, 430, 439, 443, 721-725.) Contrary to the Commissioner's arguments, this error was not harmless.[8] At the very least, the evidence may support a conclusion that plaintiff is presumptively disabled pursuant to listing 12.05(C), describing mental retardation. That listing provides, in relevant part:[9]

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05. To satisfy the listing, plaintiff's impairment must meet the "capsule" definition, i.e., the requirement of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," as well as the criteria of at least one

---

[8] The Commissioner relies on caselaw holding that "[t]he ALJ is not required to discuss every piece of evidence, nor does the Court expect him to list every diagnosis[.]" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Taylor v. Callahan*, 969 F.Supp. 664, 670 (D. Kan. 1997). Nevertheless, an ALJ's statement that he considered the "entire record" is sufficient only when the record provides no reason to question its validity. *Cox*, 2000 WL 1472729 at * 8 (citing *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498-99 (10th Cir. 1992)). Such is not the case here.

[9] This is not to suggest that plaintiff's other mental impairments may not also satisfy the relevant listings for those conditions.

subsection. *Id*., § 12.00(A); **see also Barnes v. Barnhart**, 116 Fed. Appx. 934, 939 (10th Cir. 2004).

At age 10, plaintiff was assessed a verbal IQ score of 70, which partially satisfies the requirements of subsection C. (Tr. 425.)[10] **See Mitchell v. Barnhart**, 2004 WL 1626409 at *4 (D. Kan. July 20, 2004) (IQ presumed to be consistent over a person's lifetime).[11] Although plaintiff seeks a directed award of benefits on this issue, remand is required to allow the Commissioner to determine both whether the additional and arguably significant limitations imposed by the ALJ on plaintiff's ability to work (*see* Tr. 27) satisfy the requirements of paragraph C, as well as whether plaintiff also met the capsule definition requirement of "deficits in adaptive functioning initially manifested during the developmental period."[12] Whether plaintiff meets these standards is a fact-intensive determination that the Commissioner must be allowed to make in the first instance.

The ALJ further erred in weighing the two primary medical opinions in the record. He assigned Dr. Madsen's opinion little weight on the ground that his findings were "based on a onetime visit." (Tr. 26.) Discounting a consultative examiner's opinion

---

[10] Although plaintiff has never been diagnosed as mentally retarded, such is not required to satisfy the listing. **Rodriguez v. Astrue**, 2008 WL 1957742 at * 6 (D. Colo. May 2, 2008) (citing **Maresh v. Barnhart**, 438 F.3d 897, 899 (8th Cir. 2006)).

[11] I note that subsequent IQ testing resulted in scores in all three areas slightly above the required benchmarks. (Tr. 411.) This apparent conflict in the evidence will be one to be considered and resolved on remand.

[12] Caselaw in this circuit requires the Commissioner to measure a claimant's deficits in adaptive functioning by one of the four definitions promulgated by the major professional organizations that deal with mental retardation. **Barnes**, 116 Fed.Appx. at 942-43 (citing 67 Fed.Reg. 20018-01, 20002 (*available at* 2002 WL 661740 (SSA April 24, 2002)).

because it is based on a one-time examination is both illogical, since such is the inherent nature of a consultative examination, and ironic in this instance, given that the opinion of Dr. Glasco, to which the ALJ ultimately afforded "substantial weight," was based on no examination at all. Further, although the ALJ also claimed that the limitations found by Dr. Madsen were "not supported by the medical records and they are not consistent with other documented evidence in the record" (Tr. 26-27), his failure to specify any particular medical record or other evidence supporting his conclusion makes it impossible to meaningfully review his assertion.[13] **See Bolan v. Barnhart**, 212 F.Supp.2d 1248, 1262 (D. Kan. 2002). By the same token, the ALJ's reasons for crediting Dr. Glasco's opinion are inapposite, unsubstantiated, and do not demonstrate good cause for affording that opinion significant weight. (**See** Tr. 26 (giving "substantial weight" to Dr. Glasco's opinions "because the forms are complete, supported by detailed notes and are substantially consistent with the record as a whole").)

Yet further compounding the errors already discussed, the ALJ failed to give adequate reasons for discrediting plaintiff's testimony. Plaintiff's minimal activities of daily living, which the ALJ noted include watching television for three hours a day, vacuuming once a week, and doing laundry twice a month (Tr. 25) are hardly indicative of an ability to withstand the mental rigors of competitive employment. **See Thompson v. Sullivan**, 987 F.2d 1482, 1490 (10th Cir. 1993). Although the ALJ stated that plaintiff was working toward a GED in 2004, plaintiff in fact never completed that program. (Tr.

---

[13] A third reason cited by the ALJ, that Dr. Madsen's report failed to address plaintiff's drug and alcohol abuse (Tr. 27) is discussed in more detail *supra*.

25, 768.) Plaintiff's failure to keep a handful of medical appointments in 2000 is hardly compelling evidence of a lack of functional limitation, especially in the context of his long and protracted history of mental illness. (*See* Tr. 590, 592, 593.) The ALJ's veiled reference to certain "non-medical problems which suggest that at least some of the claimant's difficulties may be situational and not medical in nature" is nothing more than wild speculation and is completely unsupported by the record on which it purports to rely. (Tr. 25.)[14] His reliance on the fact that plaintiff's treating physician declined to provide a statement to the effect that plaintiff "cannot do any kind of work" is likewise inapposite, as such a bare conclusion would not be binding on the Commissioner in any event. *See* 20 C.F.R. §§ 404.1527(e)(1) & 416.927(e)(1). *See also Sosa v. Barnhart*, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), *adopted*, 2003 WL 21428384 (D. Kan. Jun. 17, 2003). Finally, the ALJ's vague and unsubstantiated reference to plaintiff's "generally unpersuasive appearance, presentation and demeanor while testifying at the hearing" is both unsubstantiated and clearly in insufficient, standing alone, to justify a negative credibility inference, as the ALJ himself readily acknowledged. (Tr. 25.) Thus, although in general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence," *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting

---

[14] The record citation given in support of this conclusion documents a hospitalization for attempted suicide after plaintiff broke up with his boyfriend. (Tr. 597.) It is not clear whether the ALJ meant to suggest that plaintiff's difficulties in this relationship accounted for his depressive and suicidal symptoms, which would constitute an improper medical opinion on the part of the ALJ, or to remark on plaintiff's sexual orientation, which would be not only improper but offensive. The ALJ also appears not to have even considered the possibility that plaintiff's relational difficulties might actually have been symptomatic of his mental illness.

12

*Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)), the ALJ's credibility determination cannot withstand scrutiny under even this exceptionally lenient standard.

These errors in the preceding steps undermine the ALJ's determination of plaintiff's residual functional capacity and the ultimate step-five determination on which his finding of non-disability is based.[15] For all these reasons, the ALJ's disability decision cannot stand.[16] Although I do not believe the record rises to the level of fundamental unfairness such as would justify an order requiring that the case be reassigned on remand, *see* 20 C.F.R. § 404.940; **Sutherland v. Barnhart**, 322 F.Supp.2d 282, 292 (E.D.N.Y. 2004), I nevertheless strongly recommend that the case be transferred to a different judge, *see **Sarchet v. Chater***, 78 F.3d 305, 309 (7th Cir. 1996); *see also **Kolesar v. Shalala***, 1994 WL 30544 at *15 (N.D. Ill. Feb. 3, 1994) (recommending reassignment where ALJ's decision was infected by substantial error).

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not presumptively disabled is **REVERSED**;

2. That this case is **REMANDED** to the Commissioner for further proceedings

---

[15] As yet another example of error in this case, the ALJ characterized the vocational expert as having testified that plaintiff could not return to his past relevant work based on the residual functional capacity found by the ALJ. (Tr. 27.) The vocational expert in fact testified that such a residual functional capacity was consistent with plaintiff's past relevant work. (Tr. 800-802.) In fact, the only instance in which the vocational expert testified that plaintiff's past relevant work would be excluded was when he was asked to assume that plaintiff was moderately limited in his ability to do simple, routine, and/or repetitive tasks and required limited contact with the public. (Tr. 804-805.) The ALJ, however, did not include these limitations in his residual functional capacity assessment. (Tr. 27.)

[16] By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

consistent with this opinion;[17] and

      3.  That it is **RECOMMENDED** that the Commissioner reassign this matter to a different Administrative Law Judge on remand.

      Dated September 16, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**

---

[17] In remanding a case to the Commissioner, I typically give very detailed instructions regarding what aspects of the prior decision need to be reevaluated. However, in this instance the errors are so extensive and pervasive that I believe any such instructions would be unhelpful. Instead, I believe the Commissioner in this instance must start again from scratch.